**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION**

| | | |
|---|---|---|
| ---------------------------------------- X | | |
| **IN RE:** | : | |
| | | |
| **BLACK DIAMOND MINING COMPANY, LLC,** | : | IN PROCEEDINGS UNDER CHAPTER 11 CASE NOS. 08-70066, 08-70067 and |
| **et al.,** | | 08-70069 through 08-70073 |
| | : | |
| **Debtors.** | | |
| | : | JOINTLY ADMINISTERED |
| | | |
| | : | JUDGE JOSEPH M. SCOTT |
| | | |
| | : | |
| ---------------------------------------- X | | |
| | : | |
| **TAFT A. MCKINSTRY, AS TRUSTEE OF THE BD UNSECURED CREDITORS TRUST** | : | |
| | | |
| **Plaintiff,** | : | |
| | | |
| vs. | : | **Adversary No. 11-ap-07010-jms** |
| | | |
| **HAROLD E. SERGENT, IRA J. GENSER, LARRY TATE AND ALVAREZ & MARSAL NORTH AMERICA, LLC** | : | |
| | : | |
| **Defendants.** | : | |
| ---------------------------------------- X | | |

**<u>MEMORANDUM OPINION</u>**

This matter is before the Court on the Motion to Remand and Motion for Abstention filed by Plaintiff Taft A. McKinstry, as Trustee of the BD Unsecured Creditors Trust ("Trust") on February 21, 2011 [AP Doc. 17][1] ("Motion for Abstention"), which asks this Court to mandatorily abstain from hearing this case and remand it to the state court under 28 U.S.C. § 1334(c)(2). In the alternative, the Trust argues that this Court should permissively abstain from hearing the case under 28 U.S.C. § 1334(c)(1). Harold Sergent ("Sergent"), as well as Ira J. Genser

---

[1] Documents from multiple cases will be referred to in this Memorandum Opinion. Documents from this Adversary Proceeding will be referred to as [AP Doc. ___]. Documents from the underlying bankruptcy proceedings of *In re Black Diamond Mining Company, LLC, et al.* (Consolidated Case No. 80-70066) will be referred to as [Bk. Doc. ___]. Documents from the District Court Proceeding, defined in text below, will be referred to as [E.D. Ky. Doc. ___].

("Genser"), Larry Tate ("Tate"), and Alvarez & Marsal North America, LLC ("A&M," and Genser, Tate and A&M are, collectively, the "A&M Parties") filed responses to the Trust's Motion for Abstention, to which the Trust filed a reply. The Court heard oral arguments on Friday, April 8, 2011, at which all parties were represented by counsel. The Court having reviewed the Motion for Abstention, any and all objections thereto, the record in this proceeding, and being otherwise sufficiently advised, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

A.   On February 19, 2008 ("Petition Date"), creditors filed involuntary petitions for relief against Black Diamond Mining Company LLC and its affiliates ("Debtors" or "Black Diamond") initiating the jointly administered bankruptcy proceedings before this Court styled *In re: Black Diamond Mining Company, LLC, et al.*, Case No. 08-70066 ("Bankruptcy Case").

B.   Black Diamond, before its financial demise, was a coal mining company in Eastern Kentucky. (Compl. ¶ 11 [AP Doc. 1] Ex. A).

C.   The plaintiff Taft A. McKinstry (the "Trustee") is the Trustee of the BD Unsecured Creditors Trust. The Trust is a liquidating trust appointed as a representative of the Black Diamond bankruptcy estate by the Debtors' confirmed Third Amended Joint Plan of Reorganization ("Plan"). (*See* Confirmation Order [Bk. Doc. 1562] Ex. A.) The beneficiaries of the Trust are the unsecured creditors of Black Diamond. (Compl. ¶ 2.) Pursuant to the Plan, the Trust is the acting representative of the bankruptcy estate. (Plan at 20-23.)

D.   This adversary proceeding involves a civil action the Trust filed against Sergent and the A&M Parties on July 30, 2010, in the Commonwealth of Kentucky, Floyd Circuit Court ("State Court"), styled *McKinstry v. Sergent, et al.,* Case No. 10-CI-00788 ("State Court Proceeding"). The A&M Parties removed that case to the United States District Court for the Eastern District of Kentucky, Southern District at Pikeville (the "District Court"), which was then styled *McKinstry v. Sergent, et al.*, Civil Action No. 7:10-CV-00110-ART ("District Court Proceeding").

E.	In the District Court, the Trust filed a motion to remand the case to State Court. After briefing and oral argument and by Memorandum Opinion & Order entered on January 12, 2011, the District Court found that it had subject matter jurisdiction over all the claims in this action under 28 U.S.C. § 1334 and then referred the case to this Court under Local Rule 83.12(a) for further proceedings. (Mem. Op. & Order [AP Doc. 1] at 1, 19.)

F.	After referral to this Court, the Trust filed the Motion to Abstain.

G.	In the Complaint, the Trust alleges claims against two distinct groups of defendants, discussed below.

### The Claims Against Sergent

H.	The first defendant, Harold Sergent, was the founder and former chairman of the board of Black Diamond. (Compl. ¶ 3.) In 2005 Sergent caused Black Diamond to purchase certain coal reserves and coal mines and borrowed almost the entire purchase price from a number of lenders. (Compl. ¶¶ 11-12.) Sergent then formed another company called Global Energy Holdings, LLC ("Global") and caused Black Diamond to enter into a Consulting and Sales Agreement (the "Sales Agreement") with himself and Global whereby Global and Sergent would receive $.25 per ton of coal mined, produced or sold from Black Diamond's coal properties (or purchased by Black Diamond from third parties and resold) as well as a $30,000 per month payment from Black Diamond. (Compl. ¶ 13.) The Trust alleges that no disinterested party represented Black Diamond's interests in that transaction. (Compl. ¶ 13.)

I.	The Trust alleges that, on May 11, 2006, Sergent caused Black Diamond to enter into a Royalty Agreement with certain lenders giving the lenders a royalty on Black Diamond's coal and further provided that Sergent would also receive $.04 per ton from this royalty. (Compl. ¶ 15.)

J.	The Trust claims that the Sales Agreement and the Royalty Agreement gave Sergent an incentive to cause Black Diamond to sell as much coal as possible, regardless of its production capacity, thereby creating a conflict between Sergent's personal interests and those

3

of Black Diamond. (Compl. ¶ 16.) The Trust alleges that in 2006 and 2007, because of this conflict, Sergent caused Black Diamond to enter into long-term contracts with coal purchasers whereby Black Diamond committed to supply coal in amounts that exceeded what Black Diamond could actually mine from its own mines. (Compl. ¶ 17.) Thus, to satisfy its coal supply contracts, Black Diamond was forced to purchase coal on the spot market. This approach worked while the cost of coal on the spot market was less than Black Diamond's contract prices. In early 2008, however, the spot market price of coal began to rise and eventually exceeded Black Diamond's contract prices. Black Diamond then became unable to purchase the tons of coal that were necessary to satisfy the supply contracts and it began to default on its obligations. (Compl. ¶¶ 17-22.)

K.    The Trust alleges that Black Diamond's prepetition financial demise and bankruptcy filing resulted from the actions of Sergent. (Compl. ¶¶ 1, 16, 20.) Accordingly, all of the Trust's claims against Sergent derive from conduct that occurred before the Petition Date.

L.    On August 15, 2008, Sergent filed five proofs of claim in the Bankruptcy Case. Two of those claims, Claim Nos. 1259 and 1260, assert he is owed money under the Royalty Agreement. One of the other claims, Claim No. 1261, asserts damages from the rejection of the Sales Agreement.

M.    On March 9, 2010, Sergent filed a chapter 7 bankruptcy petition in this Court (Case No. 10-50763) ("Sergent Bankruptcy"). Phaedra Spradlin ("Spradlin") was appointed the Chapter 7 Trustee in the Sergent Bankruptcy. Sergent's proofs of claim filed in the Black Diamond Bankruptcy are assets in the Sergent Bankruptcy. On April 25, 2011, Spradlin filed a Notice of Substitution as Party in Interest in the Black Diamond Bankruptcy Case. [Bk. Doc. 2049].

N.    All of Sergent's proofs of claim are the subject of objections filed by the Trust. [Bk. Docs. 2007, 2008 & 2009.]

O.  The Trustee acknowledged that there will be no distribution to beneficiaries of the Trust until there is a resolution of the litigation at issue in the Complaint.

### The Claims Against the A&M Parties

P.  The Trust also sued the A&M Parties. By order dated February 27, 2008, this Court created a new officer position at the Debtors, called the Chief Restructuring Officer ("CRO"). (Order Providing for the Employment of a Chief Restructuring Officer [Bk. Doc. 56] (the "CRO Order")).

Q.  In the CRO Order, this Court appointed Genser to this new position, specifically giving him the same powers as a bankruptcy trustee:

> IT IS HEREBY ORDERED that Debtors shall immediately employ and keep in place pending further order of the Court Ira Genser of Alvarez & Marsal North America, LLC ("Alvarez & Marsal") as Chief Restructuring Officer ("CRO") (provided that Alvarez & Marsal shall be authorized to substitute Steven Cohn for Mr. Genser in the role as CRO at the discretion of Alvarez & Marsal), on terms which are and shall remain acceptable to Petitioners, which CRO shall have the same powers as a trustee as set forth in the Bankruptcy Code.

(CRO Order at 2.) In addition, all of Genser's acts as CRO were ordered to be "valid, binding and enforceable acts of the Debtors." (CRO Order at 6.)

R.  In the CRO Order, this Court specifically found that the matters concerning the CRO were core proceedings and retained "jurisdiction with respect to all matters arising from or related to the implementation of" the CRO Order. (CRO Order at 1, 6.)

S.  In addition to the CRO Order, the Court entered an order specifically approving the terms of an engagement letter (the "Engagement Letter") with A&M. (Order Overruling Objections to CRO Order [Bk. Doc. 439].) Consistent with the terms of the CRO Order, the Engagement Letter states that "the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with their obligations hereunder." (Engagement Letter at 7.)

T.  Both the CRO Order and the order approving the terms of the Engagement Letter are final and were not appealed.

5

U. The Plan did not abrogate or otherwise affect the terms of either the CRO Order or the order approving the terms of the Engagement Letter, instead preserving the maximum subject matter jurisdiction of this Court: "[T]he Bankruptcy Court will retain such jurisdiction over the Chapter 11 Cases after the Effective Date as is legally permissible . . . ." (Plan at 39.)

V. In addition, and directly germane to this dispute, the Plan contains a provision preserving jurisdiction by this Court to decide or resolve any "contested or litigated matters . . . involving . . . the BD Unsecured Creditors Trust that may be pending on the Effective Date <u>or brought thereafter</u>." (Plan at 40 (emphasis added).) This case is a litigated matter involving the Trust.

W. The Plan's jurisdictional provisions are included in the Confirmation Order. (*See* Confirmation Order at 36.)

X. Pursuant to the CRO Order, Genser managed the restructuring of the Debtors while they were in bankruptcy. (Compl. ¶ 26, *see also* CRO Order.) With the authority vested in him by the CRO Order, Genser appointed Tate as the Debtors' Chief Financial Officer ("CFO").

Y. Genser and Tate are both employees of A&M.

Z. All of the Trust's claims against the A&M Parties pertain to whether Genser and Tate properly carried out their duties under the CRO Order during the bankruptcy. The Trust alleges that Genser and Tate "caused Black Diamond to spurn the advice of its own experts, experts to the unsecured creditors committee in the Black Diamond bankruptcy, trusted advisors and knowledgeable other parties" because they had "adopted a tunnel-visioned strategy that solely attempted to satisfy CIT's demand for a quick sale of the Company," and as a result Black Diamond missed out on "a significantly higher recovery to all its creditors and perhaps even a return to equity holders." (Compl. ¶ 52.)

AA. The claims against the A&M Parties arise from and are related to the implementation of the CRO Order.

6

BB.  The claims against the A&M Parties also arise under and are in connection with the obligations under the Engagement Letter.

## JURISDICTION

The District Court established subject matter jurisdiction before it referred this case to this Court, finding this proceeding is at least "related to" the underlying Bankruptcy Case and thereby determined that removal was proper.  (Mem. Op. & Order at 11.)

What is now before this Court is the issue of abstention, which involves considering "whether the bankruptcy court should exercise jurisdiction, not whether the court has jurisdiction in the first place."  *S.G. Phillips Constructors. Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 708 (2d Cir. 1995).

## ISSUES AND DISCUSSION

The Trust asks for abstention on two grounds – mandatory abstention, or in the alternative, permissive abstention.  The two grounds are addressed separately below.

### Mandatory Abstention

In a motion for mandatory abstention under 28 U.S.C. § 1334(c)(2), the burden is on the movant to show that abstention is required.  *Parrett v. Bank One, N.A.* (*In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*), 323 F. Supp. 2d 861, 881 (S.D. Ohio 2004); *York v. Bank of Amer., N.A. (In re York)*, 291 B.R. 806, 816 (Bankr. E.D. Tenn. 2003).

Mandatory abstention only applies if the Trust demonstrates that the claims at issue (1) are based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) are commenced in a state forum of appropriate jurisdiction; (4) are capable of timely adjudication; and (5) are non-core proceedings.  *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn.* (*In re Dow Corning Corp.*), 86 F.3d 482, 497 (6th Cir. 1996).  The party seeking mandatory abstention must satisfy all of the requirements for abstention, and the failure to satisfy even one factor will be fatal.  *Parrett*, 323 F. Supp. 2d at 881; *Trs. of Masonic Hall & Asylum Fund v. Pricewaterhousecoopers LLP,* 2009 WL 290543, at

7

*4 (S.D.N.Y. Feb. 6, 2009); *Hughes-Bechtol, Inc. v. Ohio (In re Hughes-Bechtol, Inc.)*, 141 B.R. 946, 955 (Bankr. S.D. Ohio 1992).

In the present case, the Trust brought separate claims against the A&M Parties and against Sergent.  Thus, the Court will analyze the claims separately to determine whether it must mandatorily abstain from either set of claims.

<u>The Court is Not Required to Abstain From Hearing the Claims
Against the A&M Parties Because the Claims Are Core Proceedings</u>

This Court has already determined that matters involving the CRO Order are core proceedings.  (CRO Order at 1.)  In addition, this Court retained jurisdiction "with respect to all matters arising from or related to the implementation of this Order."  (CRO Order at 6.)

In the Plan, we retained jurisdiction to the fullest extent possible, thus the Plan did not abrogate or otherwise overrule the jurisdiction provisions in the CRO Order.  (Plan at 39.)  In addition, the Plan specifically provides that jurisdiction is retained over all litigation pursued by the Trust to resolve any "contested or litigated matters . . . involving any Debtor or the BD Unsecured Creditors Trust that may be pending on the Effective Date or brought thereafter." (Plan at 40.)

Because all of the claims alleged against the A&M Parties are based on the A&M Parties' actions as CRO during the bankruptcy pursuant to the terms of the CRO Order, those claims "arise from" and "relate to the implementation of" the CRO Order and therefore fall within this Court's retained jurisdiction.

In addition, prevailing case law confirms that the claims against the A&M Parties are core proceedings under 28 U.S.C. § 1334(b) and § 157(b).

Under 28 U.S.C. § 157(b)(1), bankruptcy "core proceedings" include civil proceedings under two of the jurisdictional categories in 28 U.S.C. § 1334(b), those matters "arising under" the Bankruptcy Code or "arising in" a bankruptcy case.  *Michigan Employment Sec. Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1144 (6th Cir. 1991).  Unlike

8

"related to" proceedings, bankruptcy courts can hear and finally determine core proceedings. *Compare* 11 U.S.C. § 157(b)(1) *with* § 157(c) (providing that bankruptcy court can hear "related to" proceedings, but district court must render final order or judgment).

The claims against the A&M Parties are core proceedings both by being within the list of nonexclusive core proceedings set forth in § 157(b)(2) and by meeting the general test for a "core proceeding" in that they are claims "arising in" cases under title 11.

The list set forth in § 157(b)(2) includes matters "concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). In the Sixth Circuit, tort claims against parties for activities in the conduct of a bankruptcy case fall within this provision because the "genesis" of such proceedings is the bankruptcy action, and therefore, the proceedings "could not exist outside of the bankruptcy." *Lowenbraun v. Canary* (*In re Lowenbraun*), 453 F.3d 314, 320-21 (6th Cir. 2006) (quoting *Sanders Confectionery Prods. Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 482 (6th Cir. 1992)). Specifically, claims against parties who are the "functional equivalent of [a] trustee" are core. *Id.* (citing *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1241 (6th Cir. 1993)).

Under the CRO Order, the A&M Parties are the functional equivalent of a trustee, and the very genesis of the Trust's claims is that the A&M Parties' actions taken in the Bankruptcy Case under the terms of the CRO Order were improper. The Court finds that these claims are analogous to those at issue in *Lowenbraun* as well as those considered by the Fifth Circuit to be core in *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 927 (5th Cir. 1999), in which the court noted that the claims against the court-approved accountant were inextricably related to the bankruptcy case's administration:

> It is somewhat disingenuous for Southmark to attempt to pry these claims out of their bankruptcy setting. Southmark's petition alleges *inter alia* claims for breaches of fiduciary duty and of the contract whose terms were approved by the bankruptcy court.

9

*Id.* at 931; *see also Am. Freight Sys., Inc. v. Blymyer Eng'rs, Inc.* (*In re Am. Freight Sys., Inc.*), 236 B.R. 47, 53-55 (Bankr. D. Kan. 1999) (holding that claims against environmental contractor hired by the Debtor/liquidating agent were core proceedings under § 157(b)(2)(A) because the actions at issue were part of the Debtor's "efforts to liquidate the property of the estate" and stemmed from contracts entered into before confirmation of the plan).

Thus, all of the claims against the A&M Parties are for their actions in their capacity as court-appointed employees of the estate during their administration of the bankruptcy estate and are therefore core proceedings under § 157(b)(2)(A).

The claims against the A&M Parties also meet the general test for a "core proceeding" in that they are claims "arising in" a case under title 11.

Proceedings "arising in" cases under title 11 are "those that, by their very nature, could arise only in bankruptcy cases." *Wolverine Radio,* 930 F.2d at 1144; s*ee Lowenbraun*, 453 F.3d at 322; *Stoe v. Flaherty,* 436 F.3d 209, 216 (3d Cir. 2006) ("arising in" claims "have no existence outside of the bankruptcy"); *Wood,* 825 F. 2d at 97 (finding that a proceeding is "core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case"); *Marotta*, 340 B.R. at 666 ("[C]laims that 'arise in' a bankruptcy case are claims that by their nature, *not their particular factual circumstance*, could only arise in the context of a bankruptcy case." (quoting *Stoe*, 436 F.3d at 218)) (emphasis in *Marotta*).

Courts have consistently found "arising in" jurisdiction in matters involving court-approved professionals sued for actions taken during the administration of the estate. *See In re Repository Tech., Inc.*, 601 F.3d 710, 721 (7th Cir. 2010) ("Because Nelson's lawsuit is based on the defendant's role as bankruptcy counsel, recognizing these lawyers' right to remove the case to federal court is consistent with Congress's broad grant of federal jurisdiction over bankruptcy matters."); *Geruschat v. Ernst & Young LLP* (*In re Seven Fields Dev., Corp.*), 505 F.3d 237, 260-62 (3d Cir. 2007) (finding that claims against court appointed professionals

stemming from services provided in the bankruptcy proceeding are "inseparable from the bankruptcy context" and therefore arise in a bankruptcy matter); *Honigman, Miller, Schwartz & Cohn v. Weitzman* (*In re Delorean Motor Co.*), 155 B.R. 521, 525 (B.A.P. 9th Cir. 1993) (finding action against trustee counsel and chairman of the creditors committee to be a core proceeding because "[t]he action arises from the efforts of officers of the estate to administer the estate and collect its assets and therefore impacts the handling and administration of the estate").

Here, the Trust alleges that the A&M Parties' actions in restructuring during the Black Diamond Bankruptcy Case contributed to the demise of the company and resulted in a missed opportunity to obtain "a significantly higher recovery to all its creditors and perhaps even a return to equity holders." (Compl. ¶ 52.) This allegation acknowledges that but for the Bankruptcy Case, there could be no claim against any of the A&M Parties.

In addition, the A&M Parties were court-approved officers acting as the functional equivalent of a trustee during the time of the alleged activities. Without the CRO Order and the obligations thereunder, the claims against the A&M Parties would never have existed. These claims do not depend only on the factual existence of the bankruptcy, but instead on the very nature of this Court's orders and the A&M Parties' actions under the CRO Order – a situation completely unique to the Black Diamond bankruptcy.

As a result, this matter "arises in" a case under title 11 – that is, the claims cannot be adjudicated without a factual and legal analysis of Genser's and Tate's conduct in administering Black Diamond's bankruptcy estate.

Given that all five factors must be present in order for mandatory abstention to apply, if a case is a core proceeding, the inquiry is over and mandatory abstention does not apply as to the A&M Parties. *See Lowenbraun*, 453 F.3d at 321 (affirming denial of mandatory abstention because claims against trustee counsel were core proceedings); *Woodard v. Sanders* (*In re SPI Commc'ns and Mktg., Inc.*), 112 B.R. 507, 512 (Bankr. N.D.N.Y. 1990) (finding mandatory abstention inapplicable for the same reason); *Baker v. Simpson*, 613 F.3d 346, 350-51 (2d Cir.

11

2010) (finding that claims against defendants derived from legal services rendered in connection with title 11 proceeding fell within the scope of that court's "arising in" jurisdiction and thus affirming finding that mandatory abstention did not apply).

Therefore, because the claims against the A&M Parties are core proceedings, mandatory abstention does not apply.

<u>The Claims Against Sergent Are Not Core Proceedings</u>

Sergent argues that the claims against him are core matters pursuant to 28 U.S.C. § 157(b)(2)(C) because they are "counterclaims by the estate against persons filing claims against the estate."

The claims against Sergent allege that Sergent breached fiduciary duties owed to the Debtors and engaged in willful misconduct and gross negligence by causing the Debtors to enter into certain sales and royalty agreements, which created an alleged "conflict between Sergent's personal interest to sell as much coal as possible irrespective of the profit or loss from such sales and those of Black Diamond to sell only as much coal as it could profitably mine." (Compl. ¶ 16.) The Trust further alleges that Sergent caused the Debtors to enter into supply contracts for the self-interested purpose of increasing his own commissions and royalties payable under sales and royalty agreements. (Compl. ¶ 17.)

According to Sergent, although the Debtors rejected the supply contracts, a portion of his proofs of claim include damages for commissions and royalties payable based on coal sold pursuant to the supply contracts. The Trust's claims against him, he argues, therefore arise from precisely the same contracts that give rise to his proofs of claim – from the exact same facts, circumstances, and transactions – and thus they are "counterclaims" for purposes of § 157(b)(2)(C).

The Trust, however, disagrees with Sergent and argues that the claims against Sergent are not counterclaims. Specifically, the Trust argues that the claims here and the proofs of claim filed by Sergent do not arise out of the same set of facts and circumstances. According to

12

the Trust, the claims asserted by the Trust all relate to events occurring between 2006 and 2008, while Sergent's proofs of claim all relate to future, hypothetical mining of coal that has not yet occurred. Thus, the Trust argues, because the claims are factually and logically separate, the Trust's claim against Sergent is not a compulsory counterclaim to Sergent's proofs of claim.

The Trust places heavy emphasis on the fact that the claims against Sergent are claims for prepetition conduct, thus precluding them from being considered counterclaims for purposes of § 157(b)(2)(C). Like the Court in *In re Bliss Technologies*, the Court "finds persuasive the cases holding that a state-law breach of fiduciary duty cause of action, which is based on prepetition conduct does not, and constitutionally cannot, fit within these provisions." 307 B.R. 598, 608 (Bankr. E.D. Mich. 2004).

Further, Sergent is no longer the creditor with respect to the proofs of claim. Rather, Spradlin as Chapter 7 Trustee of the Sergent Bankruptcy is the creditor owning the claims.

The Court finds that the claims against Sergent constitute non-core proceedings.

<u>The Claims Against Sergent Can Be Timely Adjudicated in the State Court Proceeding</u>

The determination that the claims against Sergent are not core proceedings does not equate to a finding that we must abstain from hearing the claims. Rather, the Court must determine whether all of the other four elements required for mandatory abstention have been established by the Trust.

In the present case, as to Sergent, the Trust can establish all five elements required for mandatory abstention. Three of the remaining elements are easily met: The claims against Sergent all arose prepetition and are based on a state law claim or cause of action. Since Sergent is a resident of Kentucky and the Trust was created under the laws of the Commonwealth of Kentucky and has its principal place of business in Kentucky, diversity jurisdiction does not apply to the claim against Sergent. Therefore, the claim against Sergent lacks a federal jurisdictional basis absent the bankruptcy. The Trust commenced an action in a state forum of appropriate jurisdiction. The fact that the State Court Proceeding has been

13

removed to the District Court and then referred to this Court does not negate this factor. The Trustee has requested that the case be remanded. "The abstention provisions of 28 U.S.C. § 1334(c)(2) apply even though a case has been removed pursuant to 28 U.S.C. § 1452." *Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579, 584 n. 3 (6th Cir. 1990).

The fourth of the five elements necessary for mandatory abstention requires that claims be capable of timely adjudication in the state forum. *In re Dow Corning Corp.*, 86 F.3d at 497. Like the general requirement that the movant bears the burden of demonstrating the elements of mandatory abstention, the movant also bears the burden of proving timely adjudication. *See Parrett*, 323 F. Supp. 2d at 881.

> In considering whether allowing a case to proceed in state court will adversely affect the administration of a bankruptcy case, courts have considered some or all of the following factors: (1) backlog of the state court and federal court calendar; (2) status of the proceeding in state court prior to being removed (i.e., whether discovery had been commenced); (3) status of the proceeding in the bankruptcy court; (4) the complexity of the issues to be resolved; (5) whether the parties consent to the bankruptcy court entering judgment in the non-core case; [footnote omitted] (6) whether a jury demand has been made; [footnote omitted] and (7) whether the underlying bankruptcy case is a reorganization or liquidation case. [Citations omitted.]

*In re Midgard Corp.,* 204 B.R. at 778–79.

Of these seven factors, the Panel opined that the last one was the most important in considering whether the administration of the bankruptcy case would be impaired by adjudication in state court. *Id.* at 779.

> Where a Chapter 11 reorganization is pending, the court must be sensitive to the needs of the debtor attempting to reorganize. Lengthy delays in collecting outstanding accounts or resolving other claims which might substantially enhance the viability of the estate, may prove fatal to reorganization efforts. Therefore, in considering whether or not to abstain, timely adjudication necessarily weighs heavily for a Chapter 11 debtor. [Quoting] *World Solar,* 81 B.R. at 612. *On the other hand, in . . . a chapter 11 case with a confirmed liquidating plan, where the primary concern is the orderly accumulation and distribution of assets, the requirement of timely adjudication is seldom significant.*

*Id.*

14

*Smith Mech. Contractors, Inc. v. Premier Hotel Dev. Grp. (In re Premier Hotel Dev. Grp.)*, 270 B.R. 243, 254-55 (Bankr. E.D. Tenn. 2001) (emphasis added).  *See also Delphi Auto. Sys., LLC v. Segway, Inc.*, 519 F. Supp. 2d 662, 669 (E.D. Mich. 2007) (using similar factors).

With respect to the factors noted above, the status of the proceeding against Sergent in the State Court Proceeding and in this Court are the same.  The case is at the beginning stages in both courts.  Contrary to the arguments of the Trust and Sergent, the issues to be resolved against Sergent are not complex.  They are simply state law *prepetition* claims for breach of fiduciary duty, gross negligence, and willful misconduct.  As noted above, the claims against Sergent are not core proceedings.  Sergent has not indicated whether he consents to this Court entering judgment in the proceedings against him.  In the event Sergent did not consent to this Court entering judgment, we would be required to submit findings of fact and conclusions of law to the district court, a step which will add to the time for resolution of the proceedings.  The Trust made a jury demand in the State Court Proceeding.  Although the parties argue whether the Trust is entitled to a jury trial, that determination can be made by the State Court.

As an indication that the State Court is able to timely adjudicate the claims against Sergent, the Trust referred to a report of the Kentucky circuit court caseload from the Kentucky Administrative Office of the Courts.  That report indicates that in 2009 Floyd County Circuit Court had the lightest caseload of new cases per judge out of the 57 Kentucky circuit courts.  The caseload for new cases filed in Floyd County Circuit Court was 461.00 cases per judge compared with an average caseload for new cases per judge in Kentucky of 1,180.02.  Further, the Floyd County judges closed 423.50 cases in the same time period as receiving 461.00 new cases. [E.D. Ky. Doc. 38-4 at 855, 856].  Neither Sergent nor the A&M Parties objected to the introduction of this information at the hearing.  Nor did they present any evidence to the contrary.

Finally, this is a liquidating chapter 11 case.  The Plan has been filed.  The accumulation and distribution of assets is all that remains.  As noted above, this is the most significant factor

15

in determining whether the case against Sergent can be timely adjudicated in the State Court without adversely affecting the Black Diamond Bankruptcy Case.

Reviewing all of the above factors, we find that the Trust has met its burden of showing that the claims against Sergent can be timely adjudicated in the State Court.  Therefore, because the claims against Sergent meet all of the factors for mandatory abstention, we must abstain from hearing the issues raised against Sergent in this proceeding.

In light of our decision with respect to Sergent, remand of this proceeding to the State Court from which it was removed is appropriate as to the claims against Sergent.

> Remand of removed proceedings is governed by 28 U.S.C. § 1452(b) which provides in pertinent part that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. . . ."   "The presence of factors suggesting discretionary abstention pursuant to 1334(c)(1) and factors requiring mandatory abstention under 1334(c)(2) provides ample equitable grounds for remand of the lawsuit to state court." *Roddam v. Metro Loans, Inc. (In re Roddam),* 193 B.R. 971, 981 (Bankr. N.D. Ala. 1996) (citing *Borne v. New Orleans Health Care, Inc.,* 116 B.R. 487, 494 (E.D. La. 1990) ("[T]he considerations underlying discretionary abstention and remand are the same.")).  "Accordingly, where the facts before the court mandate or compel abstention, equitable grounds for remand exist under § 1452(b) and remand of the proceeding to state court is favored." *In re Best Reception Systems,* 220 B.R. at 958.

*In re Premier Hotel Dev. Grp.*, 270 B.R. at 258.

### **Permissive Abstention**

The Trust also asks the Court to exercise its discretion to permissively abstain.  Since we have already found that we must abstain and will remand as to the claims against Sergent, we review permissive abstention only as to the A&M Parties.

When determining whether permissive abstention under 28 U.S.C. § 1334(c)(1) is appropriate, courts look at nine factors:  (1) the impact upon the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the jurisdictional basis; (5) the degree of relatedness to the bankruptcy case; (6) the existence of forum shopping; (7) the existence of the right to a jury trial; (8) the presence of non debtor parties in the case; and (9)

any unusual or other significant factors.  *See Armstrong v. Trans-Service Logistics, Inc. (In re Trans-Service Logistics, Inc.),* 304 B.R. 809, 812 (Bankr. S.D. Ohio 2004); *see also Parrett*, 323 F. Supp. 2d at 885 (listing 13 permissive abstention factors that are substantially similar to those in *Armstrong*).

Looking at the nine factors, only a few are relevant to the analysis here, and all weigh against abstention.

First and foremost, the most significant factor weighing against permissive abstention is this Court's own retention of jurisdiction over these matters pursuant to the CRO Order.  If the Court decided to abstain from this proceeding, it would be contravening its own order in which it held it would determine "all matters arising from or related to the implementation of this Order." (CRO Order at 6.)  For this Court to now decide that it should not maintain jurisdiction would make the retention of jurisdiction in both the CRO Order and the Plan meaningless.

The other factors also weigh against abstention.  The claims against Genser, Tate, and A&M are against parties charged with the administration of the bankruptcy estate, and those claims involve only the alleged breaches of duties arising from their conduct of the bankruptcy case itself.  The basis for jurisdiction over these claims is exceptionally strong – this Court retained jurisdiction, and under the Sixth Circuit authority, those claims are both related to the Black Diamond case and within this Court's core subject matter jurisdiction.  Thus, factors four and five weigh strongly against abstention.

Factor two does not support abstention either.  Even though the alleged claims and elements thereof are based in state law, for any court to make a decision based on those claims as to whether the A&M Parties' actions were improper, it will necessarily need to consider both substantive and procedural bankruptcy law.  In these circumstances, "[i]t defies logic that a court less acquainted with bankruptcy law will better address issues of alleged malpractice in a bankruptcy context than a bankruptcy court." *In re SPI Commc'ns*, 112 B.R. at 512.  As a result, this factor supports bankruptcy court jurisdiction.

The other factors to be considered are either not applicable or provide little guidance on the question at hand. Even if all of the other factors weighed in favor of the Trust, the factors listed above carry greater weight and support maintaining jurisdiction over the claims against the A&M Parties. As such, the Court declines to permissively abstain from hearing the claims against the A&M Parties under 28 U.S.C. § 1334(c)(1).

## CONCLUSION

An order will be entered in accordance with this Memorandum Opinion **SUSTAINING** the Trust's Motion for Abstention as to its claims against Sergent and remanding those claims to the State Court and **OVERRULING** the Trust's Motion for Abstention as to its claims against the A&M Parties.

**COPIES TO:**

Ellen Arvin Kennedy, Esq. (for service on interested parties)
Adam P. Schiffer, Esq.
Taft A. McKinstry, Esq.
Jay S. Geller, Esq.
Jay Edward Ingle, Esq.
John C. Goodchild, III, Esq.
Mary Elisabeth Naumann, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
*Joseph M. Scott, Jr.*
**Bankruptcy Judge
Dated: Thursday, June 23, 2011
(jms)**