# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY
### Pikeville Division

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | Case Nos. 08-70066, 08-70067 and |
| BLACK DIAMOND MINING | : | 08-70069 through 08-70073 |
| COMPANY, LLC, et al. | : | Jointly Administered |
| | : | Judge Joseph M. Scott |
| **Debtors** | : | |
| | : | |
| | : | |
| TAFT A. McKINSTRY, AS TRUSTEE OF | : | |
| THE BD UNSECURED CREDITORS TRUST, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Adv. Proceeding No. 11-07010 |
| | : | |
| HAROLD E. SERGENT, IRA J. GENSER, | : | |
| LARRY TATE and ALVAREZ & MARSAL | : | |
| NORTH AMERICA, LLC, | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

This matter is before the Court on the Motion for Stay Pending Appeal ("Motion for Stay") (AP Doc. 32)[1] filed by Harold E. Sergent ("Sergent"). The motion requests that this Court stay its Order (AP Doc. 27) and Memorandum Opinion (AP Doc. 26) (together, the "Abstention Order") entered in this adversary proceeding on June 23, 2011. The Abstention Order sustained in part and overruled in part the Motion to Remand and Motion for Abstention ("Motion for Abstention") (AP Doc. 17) filed by Plaintiff Taft A. McKinstry, as Trustee ("Trustee McKinstry") of the BD Unsecured Creditors Trust (the "Trust"). The Abstention Order sustained Trustee McKinstry's Motion for Abstention insofar as it remands this adversary proceeding back to the Commonwealth of Kentucky, Floyd Circuit Court ("State Court"), under the case styled *McKinstry v. Sergent, et al.,* Case No. 10-CI-00788 ("State Court Proceeding") for a determination of the claims raised by

---

[1] Documents filed in this adversary proceeding are referred to as (AP Doc. ___). Documents filed in the main bankruptcy case are referred to as (Bk. Doc. ___).

Trustee McKinstry against Sergent ("Sergent Claims").   The Abstention Order overruled the

Motion for Abstention with respect to Trustee McKinstry's claims against the remaining

defendants, Ira J. Genser ("Genser"), Larry Tate ("Tate") and Alvarez & Marsal North America,

LLC ("A&M") ("A&M Claims").   Collectively, Genser, Tate and A&M are referred to herein as the

A&M Defendants.   At this time, the A&M Claims remain in this adversary proceeding to be

adjudicated by this Bankruptcy Court.[2]

On July 7, 2011, along with the Motion for Stay, Sergent filed his Notice of Appeal, as

amended on July 13, 2011 ("Notice of Appeal") (AP Docs. 30 & 40) with an election for the appeal

to be heard by the District Court (AP Doc. 31).   Trustee McKinstry filed an objection (AP Doc. 52)

to the Motion for Stay and Sergent filed a response (AP Doc. 58) to the objection.   A hearing was

held on August 12, 2011.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).   The following constitutes the Court's Findings

of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND AND PROCEDURAL FACTS

### A.   Black Diamond's Chapter 11 Case and the Plan

1.   On February 19, 2008, three creditors filed involuntary petitions for relief against

Black Diamond Mining Company, LLC and its affiliates ("Black Diamond" or the "Debtors"),

initiating the jointly administered bankruptcy proceedings before this Court styled *In re: Black

Diamond Mining Company, LLC, et al.*, Case No. 08-70066 (the "Bankruptcy Case").   On

March 11, 2008, this Court entered an order for relief on the involuntary petitions (Bk. Doc. 137).

2.   On July 23, 2009, this Court entered an order (the "Confirmation Order") (Bk. Doc.

1562) confirming the Debtors' Third Amended Joint Plan of Liquidation, as Modified (the "Plan")

---

[2] The Trustee has filed a Motion of Plaintiff Taft A. McKinstry, as Trustee, to Withdraw Reference,
as amended ("Motion to Withdraw Reference") (Docs. 45 & 46).

(Confirmation Order, Ex. A).   On the effective date of the Plan the Trust was created and Trustee McKinstry was appointed.   (Confirmation Order at 29-30; Plan at 20-23 & Ex. IV.C.1).

3.    The Plan and the Confirmation Order provided for the assignment to the Trust of Black Diamond's claims against Sergent, along with Black Diamond's claims against the A&M Defendants.   (Confirmation Order at Ex. B; Plan at 5).

**B.    Sergent's Proofs of Claim and Bankruptcy**

4.    On August 15, 2008, Sergent filed five proofs of claim in the Bankruptcy Case (Claim Nos. 1257-61).   Claim Nos. 1257 and 1258 include amounts for alleged "money loaned" to Black Diamond.   Virtually all of the amounts sought in the remaining claims, Claim Nos. 1259, 1260 and 1261, consist of expectation or rejection damages for sales commission fees and royalty fees that Sergent allegedly would have earned in the future had Black Diamond not filed chapter 11.

5.    On March 9, 2010, Sergent filed a chapter 7 bankruptcy petition in this Court (Case No. 10-50763) (the "Sergent Bankruptcy").   Phaedra Spradlin ("Trustee Spradlin") was appointed the Chapter 7 Trustee in the Sergent Bankruptcy.   Sergent's proofs of claim against Black Diamond's estate are assets of the Sergent Bankruptcy estate.   On April 25, 2011, Trustee Spradlin filed a Notice of Substitution as Party in Interest in the Black Diamond Bankruptcy Case. (Bk. Doc. 2049).

6.    Trustee McKinstry objected to each of Sergent's proofs of claim against the Black Diamond estate ("Objections to Proofs of Claim") (Bk. Docs. 2007-09).

7.    On June 23, 2011, an Order Holding Objections to Proofs of Claim in Abeyance (Bk. Doc. 2052) was entered with holding decision on the objections in abeyance pending a decision by the State Court in the State Court Proceeding.

**C.    Trustee McKinstry's Claims against Sergent**

8.    On July 30, 2010, Trustee McKinstry filed the Complaint (the "Complaint") against Sergent and the A&M Defendants in the State Court Proceeding (AP Doc. 1, Ex. A).   In the

Complaint, Trustee McKinstry asserted as the Sergent Claims, state law claims of breach of fiduciary duty, willful misconduct and gross negligence against Sergent (Counts I and II). (Compl. ¶¶ 53-59).    Sergent will not be personally liable for any judgment Trustee McKinstry may obtain on the Sergent Claims, as Trustee McKinstry agreed to seek recovery only from applicable insurance coverage as part of an agreed order lifting the automatic stay in the Sergent Bankruptcy.    (Sergent Bk. Doc. 25).

9.    In the Sergent Claims, Trustee McKinstry alleges, among other things, that Sergent had a personal economic interest in committing Black Diamond to sell as much coal as possible – regardless of Black Diamond's production capabilities – to allow Sergent to earn a $.25 per ton sales commission for every ton sold and a $.04 per ton royalty commission for every ton sold.    (Compl. ¶¶ 14-17).

10.    Trustee McKinstry also alleges that to earn fees and otherwise promote his economic self-interest at Black Diamond's expense, in 2006 and 2007, Sergent caused Black Diamond to enter into a number of long-term contracts with coal purchasers under which Black Diamond committed to supply tons of coal that Sergent knew vastly exceeded what Black Diamond could actually produce from its own mines (the "Supply Contracts").    Trustee McKinstry also alleges that Sergent acted willfully and recklessly and breached his fiduciary duty by causing Black Diamond to have to depend on spot market purchases of coal to meet its obligations under the Supply Contracts.    (Compl. ¶¶ 17-20).

11.    By early 2008, the spot market price of coal had risen from between $46 and $52 per ton as of the entry into the Supply Contracts to approximately $70-$80 per ton, depending on the quality of coal sold.    (Compl. ¶¶ 18, 21).    Black Diamond therefore lost approximately $20-$30 for each ton of coal it had to buy on the spot market to meet its obligations under the Supply Contracts, causing Black Diamond to default on its obligations and suffer a financial crisis as of January 2008.    (Compl. ¶ 22).

12.    In the Complaint, Trustee McKinstry also asserted state law claims of willful misconduct and gross negligence against the A&M Defendants (Counts III through V).   (Compl. ¶¶ 60-73).   Trustee McKinstry's claims against the A&M Defendants arose out of the alleged mismanagement of Black Diamond during the course of its bankruptcy by Genser (Black Diamond's Chief Restructuring Officer) and Tate (Black Diamond's Chief Financial Officer). (Compl. ¶¶ 28-52).

13.    The A&M Defendants removed the State Court Proceeding to the United States District Court for the Eastern District of Kentucky (the "District Court").    *See McKinstry v. Sergent, et al.*, No. 7:10-cv-00110-ART.    Sergent then joined in the removal.    Trustee McKinstry challenged removal, moving the District Court to remand or abstain.

14.    On January 12, 2011, the District Court entered its Memorandum Opinion and Order concluding that it had "related to" subject matter jurisdiction over the State Court Proceeding (the "Removed Case") under 28 U.S.C. § 1334.   (AP Doc. 1).   The District Court then referred the Removed Case to this Court under Local Rule 83.12(a).   Trustee McKinstry then renewed her abstention motion in this Court (the "Abstention Motion").   (AP Doc. 17).

15.    After reviewing the Abstention Motion, all related pleadings and other evidence of record and hearing the oral arguments of the parties, on June 23, 2011, this Court entered the Abstention Order abstaining as to the Sergent Claims under 28 U.S.C. § 1334(c)(2), and remanding those claims to the State Court.

16.    This Court denied the Abstention Motion as to the A&M Defendants.

17.    Sergent then filed the Notice of Appeal and this Motion for Stay seeking a stay of the Abstention Order pending an appeal of the order to the District Court.

### LAW AND DISCUSSION

With respect to a stay pending appeal, the Federal Rules of Bankruptcy Procedure provide:

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, . . . or
> for other relief pending appeal must ordinarily be presented to the bankruptcy

> judge in the first instance. . . . [S]ubject to the power of the district court and the
> bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may
> suspend or order the continuation of the other proceedings in the case under the
> Code or make any other appropriate order during the pendency of the appeal on
> such terms as will protect the rights of the parties in interest.

FED. R. BANKR. P. 8005.   In considering whether a stay should be granted under Rule 8005, the

bankruptcy court considers the following factors:

> (1) [T]he likelihood that the party seeking the stay will prevail on the merits of the
> appeal; (2) the likelihood that the moving party will be irreparably harmed absent a
> stay; (3) the prospect that others will be harmed if the court grants the stay; and (4)
> the public interest in granting the stay.   These factors are not prerequisites that
> must be met, but are interrelated considerations that must be balanced together.
>
> Although the factors to be considered are the same for both a preliminary
> injunction and a stay pending appeal, the balancing process is not identical due to
> the different procedural posture in which each judicial determination arises. . . .

*Michigan Coalition of Radioactive Material Users v. Griepentrog*, 945 F.2d 150, 153 (6th Cir.

1991) (quotations and citations omitted); *see also Zurich Am. Ins. Co. v. Lexington Coal Co., LLC*

*(In re HNRC Dissolution Co.),* 371 B.R. 210, 238 (E.D. Ky. 2007).   The burden of showing a

combination of the above factors is on the moving party.   *In re HNRC Dissolution Co.*, 371 B.R. at

238.   "A motion for stay pending appeal under Bankruptcy Rule 8005 'is an extraordinary remedy

and requires a substantial showing on the part of the movant.'"   *In re F.G. Metals, Inc.*, 390 B.R.

467, 471 (Bankr. M.D. Fla. 2008) (quoting *In re Cusson*, 2008 WL 594456, at *2 (Bankr. D. Vt.

Feb. 22, 2008)).   "Although no one factor is controlling, a finding that there is simply no likelihood

of success on the merits is usually fatal."   *Gonzales v. Nat'l Bd. of Medical Examiners*, 225 F.3d

620, 625 (6th Cir. 2000).

In this case, the Court abstained from hearing the Sergent Claims under 28 U.S.C.

§ 1334(c)(2), which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or
> State law cause of action, related to a case under title 11 but not arising under title
> 11 or arising in a case under title 11, with respect to which an action could not have
> been commenced in a court of the United States absent jurisdiction under this
> section, the district court shall abstain from hearing such proceeding if an action is
> commenced, and can be timely adjudicated, in a State forum of appropriate
> jurisdiction.

28 U.S.C. § 1334(c)(2).   In connection with entering the Abstention Order, this Court held that

Trustee McKinstry satisfied each of the elements of § 1334(c)(2).

**A.      Sergent Has Not Established A Likelihood of Success on the Merits of His Appeal**.

Sergent's arguments in support of his contention that he will prevail on the merits of his

appeal are (i) this Court erred in not considering whether it had supplemental jurisdiction with

respect to the Sergent Claims, and (ii) this Court erred in abstaining from hearing the Sergent

Claims because (a) the Sergent Claims are core matters under § 157(b)(2)(C), and (b) the

Sergent Claims cannot be timely adjudicated in state court.   In *Griepentrog*, the Sixth Circuit

stated:

> [A] movant seeking a stay pending review on the merits of a district court's
> judgment will have greater difficulty in demonstrating a likelihood of success on the
> merits.   In essence, a party seeking a stay must ordinarily demonstrate to a
> reviewing court that there is a likelihood of reversal. . . .
>
> To justify the granting of a stay, however, a movant need not always
> establish a high probability of success on the merits.   The probability of success
> that must be demonstrated is inversely proportional to the amount of irreparable
> injury plaintiffs will suffer absent the stay.   Simply stated, more of one excuses
> less of the other.   This relationship, however, is not without its limits; the movant is
> always required to demonstrate more than the mere "possibility" of success on the
> merits.   For example, even if a movant demonstrates irreparable harm that
> decidedly outweighs any potential harm to the defendant if a stay is granted, he is
> still required to show, at a minimum, serious questions going to the merits.

*Griepentrog*, 945 F.2d at 153-54 (quotations and citations omitted).

<u>Supplemental Jurisdiction Argument</u>

Sergent's first argument is that this Court erred in abstaining from hearing the Sergent

Claims because the Sergent Claims, even if deemed "non-core," could have been commenced in

a federal court absent jurisdiction under 28 U.S.C. § 1334 pursuant to principles of supplemental

jurisdiction.[3]   Sergent argues that the Sergent Claims could be supplemental to Trustee

McKinstry's claims against the A&M Defendants.

---

[3] 28 U.S.C. § 1367, the supplemental jurisdiction statute, provides:

(a) Except as provided in subsections (b) and (c) or as expressly provided
otherwise by Federal statute, in any civil action of which the district courts have

There is a split of authority among the courts of appeal and bankruptcy courts as to whether a bankruptcy court may properly exercise supplemental jurisdiction and the Sixth Circuit has not addressed the issue.[4]  *See Rhiel v. Central Mortg. Co. (In re Kebe)*, 444 B.R. 871, 879-80 (Bankr. S.D. Ohio 2011).   Given the Supreme Court's recent decision in *Stern v. Marshall*, 564 U.S. ____, 131 S. Ct. 2594 (2011), which limited the bankruptcy court's jurisdiction in "related to" cases, this Court doubts very seriously that the Supreme Court would find that the bankruptcy courts have supplemental jurisdiction which could include claims entirely unrelated to bankruptcy merely because those claims relate to the same case or controversy as a cause of action pending before the bankruptcy court.   *Townsquare Media, Inc. v. Brill*, ___ F.3d ___, 2011 WL 2906162, at *4 (7th Cir. July 21, 2011) (musing that "[i]t would be odd to think a bankruptcy judge could do more in the case of a supplemental state-law claim" than he could do in a "related to" case under § 1334(b)).

---

original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
. . .
   (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
      (1) the claim raises a novel or complex issue of State law,
      (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
      (3) the district court has dismissed all claims over which it has original jurisdiction, or
      (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

[4] A substantial majority of courts have concluded that bankruptcy courts are not authorized to exercise supplemental jurisdiction over claims under 28 U.S.C. § 1367.   *See, e.g., In re Walker*, 51 F.3d 562, 572-73 (5th Cir. 1995); *Halvajian v. Bank of New York*, 191 B.R. 56, 58-59 (D.N.J. 1995); *In re Baruch*, 446 B.R. 844, 849 (Bankr. S.D. Ohio 2011); *In re Valley Food Servs., LLC*, 400 B.R. 724, 728-30 (Bankr. W.D. Mo. 2008); *In re Enron Corp.*, 353 B.R. 51, 59-63 (Bankr. S.D.N.Y. 2006); *In re Conseco*, 305 B.R. 281, 286-87 (Bankr. N.D. Ill. 2004); *In re Davis*, 216 B.R. 898, 902 (Bankr. N.D. Ga. 1997); *In re Goldstein*, 201 B.R. 1, 6-7 (Bankr. D. Me. 1996).   These courts reason that bankruptcy courts cannot exercise supplemental jurisdiction over claims because 28 U.S.C. § 157 permits district courts to refer only cases "arising under," "arising in" or "related to" a chapter 11 case to bankruptcy courts.

Sergent posits that the District Court would be empowered to exercise supplemental jurisdiction over the Sergent Claims if the A&M Claims were pending in the District Court.   *See*, *e.g.*, *Edge Petroleum Operating Co., Inc. v. GPR Holdings, LLC (In re TXNB Internal Case)*, 483 F.3d 292, 300 (5th Cir. 2007).   While Trustee McKinstry has filed a motion to withdraw the reference (AP Doc. 45), the A&M Claims remained pending in this Court when the Abstention Order was entered and remain in this Court as of the date hereof.   Accordingly, supplemental jurisdiction does not provide an independent basis for jurisdiction over the Sergent Claims.

## Core Proceeding Argument

Sergent's second argument is that this Court erred in abstaining from hearing the Sergent Claims because the Sergent Claims are "core" proceedings.   Sergent argues that the Sergent Claims constitute "counterclaims by the estate against persons filing claims against the estate" under 28 U.S.C. § 157(b)(2)(C).

The Sergent Claims do not qualify as "counterclaims by the estate against persons filing claims against the estate" under the text of § 157(b)(2)(C).   Sergent does not own the proofs of claim he filed against Black Diamond, which are held by Trustee Spradlin as the Chapter 7 Trustee in the Sergent Bankruptcy.   Sergent also does not have a personal economic interest in the litigation over the Sergent Claims, as due to the Sergent Bankruptcy Trustee McKinstry agreed to limit her recoveries in the State Court Proceedings on those claims solely to the limits of the insurance coverage.   Because Sergent personally is not on either side of the two disputes between "Sergent" and Trustee McKinstry, the two disputes lack the mutuality of parties that is required to be a "core" matter under the text of § 157(b)(2)(C).

Moreover, this Court cannot constitutionally treat the state law claims against Sergent as "core" proceedings.   On the same day that this Court ruled on the Abstention Motion, the Supreme Court issued its opinion in *Stern v. Marshall*, 564 U.S. ___, 131 S. Ct. 2594 (2011) on the constitutionality of § 157(b)(2)(C).   In *Marshall*, the Supreme Court held that a counterclaim

can be considered core on a constitutional basis only if it would "necessarily be resolved in the claims allowance process."   *Id.* at 2618.

The Sergent Claims will not "necessarily be resolved" by the process of ruling on Sergent's proofs of claim.   Trustee McKinstry's objections to the Sergent Claims raise several legal arguments, including under § 502(b)(4)[5] of the Bankruptcy Code, that this Court may be able to resolve as a matter of law or through a limited amount of fact-finding without ruling on the breach of fiduciary duty and other allegations of misconduct underlying the Sergent Claims. Accordingly, just as in *Marshall*, this Court cannot constitutionally assert core jurisdiction over the Sergent Claims under 28 U.S.C. § 157(b)(2)(C).

### **Timely Adjudication Argument**

Sergent final argument relating to success on the merits is that this Court erred in abstaining from hearing the Sergent Claims because the Sergent Claims cannot be "timely adjudicated" in State Court.

Sergent does not contest the evidence offered by Trustee McKinstry in connection with the Abstention Motion indicating that the State Court has a very light caseload and can timely hear the matter.   Sergent also fails to challenge this Court's conclusion that state courts are well suited to hear the state law claims asserted by Trustee McKinstry, especially in a liquidating chapter 11 case.   *See* Mem. Op. at 14-16; *see also XL Sports, Ltd. v. Lawler*, 49 Fed. Appx. 13, 20 (6th Cir. 2002) (holding that mandatory abstention applied where "nothing in the record indicates that the Tennessee courts would not adjudicate the claim in a timely fashion or that the chancery court lacks jurisdiction").

The State Court therefore can timely adjudicate the Sergent Claims.

---

[5]  11 U.S.C. § 502(b)(4) provides that if an "objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . and shall allow such claim in such amount, except to the extent that . . . (4) such claim is for services of an insider . . . , such claim exceeds the reasonable value of such services."

Each of Sergent's arguments against mandatory abstention under 28 U.S.C. § 1334(c)(2) fail.   Sergent has not established that there is a likelihood of reversal of the Abstention Order on appeal.

**B.    Sergent Will Not Be Irreparably Harmed Absent a Stay**.

Having failed to show a likelihood of success on the merits, Sergent must make a more substantial showing of irreparable harm.   *Griepentrog*, 945 F.2d at 153 ("The probability of success [on the merits] that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay.").   In *Griepentrog,* the Sixth Circuit stated:

> In evaluating the harm that will occur depending upon whether or not the stay is granted, we generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided.   In evaluating the degree of injury, it is important to remember that
>
> > [t]he key word in this consideration is *irreparable.*   Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.
>
> *Sampson v. Murray,* 415 U.S. 61, 90, 94 S. Ct. 937, 953, 39 L. Ed. 2d 166 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n,* 259 F.2d 921, 925 (D.C. Cir. 1958)).   *In addition, the harm alleged must be both certain and immediate, rather than speculative or theoretical.   In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again.*

*Griepentrog*, 945 F.2d at 154 (some citations omitted) (emphasis added).   Sergent argues that he will be irreparably harmed absent a stay because Trustee McKinstry will be permitted to proceed on the Sergent Claims in State Court and the State Court may make rulings which affect Sergent's rights in the event Sergent is successful on the merits of his appeal.   This alleged harm suffered by Sergent is no different than that of any other party who appeals an order remanding a case to state court and can serve as no basis for granting the Motion for Stay.   Sergent also asserts that if the A&M Defendants are not parties to the State Court Proceeding that he will be without the "full complement of discovery tools (such as interrogatories and requests for admission) that would be afforded to him if the A&M Parties were parties."   (Mo. for Stay at 19).

This inconvenience does not rise to the level of irreparable harm.   All litigants face the same limitations in obtaining discovery from individuals or entities that are not parties to a lawsuit.

Finally, Sergent argues that without the stay, he will be forced to "fight a war on three separate fronts simultaneously" because he will be involved in the State Court Proceeding, the appeal in the District Court and possibly intervening in this adversary proceeding or filing a third-party complaint against the A&M Defendants in the State Court Proceeding.   Again, this inconvenience does not rise to the level of irreparable harm.

**C.      The Other Applicable Factors Weigh Against a Stay.**

The other applicable factors (prospect that others will be harmed if the court grants the stay and public interest in granting the stay) also weigh against a stay of the Abstention Order. The litigation claims against Sergent and the A&M Defendants are the primary source of recovery for the unsecured creditor beneficiaries of the Trust, and Trustee McKinstry has confirmed that no distribution will be made to creditors until the litigation is completed.   An additional delay in Trustee McKinstry's right to litigate the Sergent Claims in State Court would prejudice Trustee McKinstry's right to litigate her claims as well as the public interest in maximizing recoveries for the unsecured creditor beneficiaries of the Trust.

### CONCLUSION

Based on the foregoing, the Court being otherwise sufficiently advised, the Court concludes that the Motion for Stay is hereby DENIED.   A separate order in conformity herewith shall be entered.

**Copies to**:

Ellen Arvin Kennedy, Esq. (For service on all interested parties)
Geoffrey Goodman, Esq.
Mary Elisabeth Naumann, Esq.
Jay S. Geller, Esq.
Jay Edward Ingle, Esq.
John C. Goodchild, III

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
*Joseph M. Scott, Jr.*
**Bankruptcy Judge**
**Dated: Wednesday, September 21, 2011**
**(jms)**