**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**Pikeville Division**

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | Case Nos. 08-70066, 08-70067 and |
| BLACK DIAMOND MINING | : | 08-70069 through 08-70073 |
| COMPANY, LLC, et al. | : | Jointly Administered |
| | : | Judge Joseph M. Scott |
| Debtors | : | |
| | : | |
| TAFT A. McKINSTRY, AS TRUSTEE OF | : | |
| THE BD UNSECURED CREDITORS TRUST, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Proceeding No. 11-07010 |
| | : | |
| HAROLD E. SERGENT, IRA J. GENSER, | : | |
| LARRY TATE and ALVAREZ & MARSAL | : | |
| NORTH AMERICA, LLC, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

This matter is before the Court on the Motion for Summary Judgment and Memorandum in support thereof ("Motion for Summary Judgment") (AP Doc. 82)[1] filed by Defendants Ira J. Genser ("Genser"), Larry Tate ("Tate") and Alvarez & Marsal North America, LLC ("A&M") (Genser, Tate and A&M are referred to collectively as the "A&M Parties'). Plaintiff Taft A. McKinstry, as Trustee of the BD Unsecured Creditors Trust ("Trust") filed a Response to the Motion for Summary Judgment (Doc. 94). A hearing was held on the Motion for Summary Judgment and the matter was taken under submission.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b), and this is a core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A).

---

[1] Documents from this Adversary Proceeding will be referred to as (AP Doc. ___). Documents from the underlying bankruptcy proceedings of Black Diamond Mining Company, LLC and affiliates (Case No. 08-70066) will be referred to as (Bk. Doc. ___).

Upon consideration of the arguments of counsel, the Motion for Summary Judgment, and the Response, as well as the Reply (Doc. 114) filed by the A&M Parties, the Surreply (Doc. 137 filed by the Trustee, all exhibits filed herein, and the record in this case, the Court finds that the Motion for Summary Judgment shall be OVERRULED.

The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

**FACTS**

1. Black Diamond Mining Company LLC and its affiliates[2] ("Debtor" or "Black Diamond") filed chapter 11 bankruptcy petitions on February 19, 2008.

2. An Order Providing for the Employment of a Chief Restructuring Office ("CRO Order") (Bk. Doc. 56) was entered on February 27, 2008, in which the Debtor was authorized to employ Genser, an employee of A&M, as the Debtor's Chief Restructuring Officer ("CRO").

3. Effective February 20, 2008, the Debtor and A&M entered into a letter agreement ("Engagement Letter") (Bk. Doc. 94) providing for the engagement of A&M to provide services to the Debtor and in connection with the engagement providing for Genser to serve as the CRO and for Larry Tate to serve as Chief Financial Officer.

4. An Order Overruling Objections to the Chief Restructuring Officer Order ("Order Approving Engagement Letter") (Bk. Doc. 439) was entered on April 22, 2008, approving the terms of the Engagement Letter effective *nunc pro tunc* February 20, 2008.

5. The Court, to clarify Genser's position, has previously stated: "Mr. Genser is a chief restructuring officer. He is not a Trustee under the law. There is no Trustee in this case." (Trustee Ex. 19 at 75).

6. Effective July 22, 2009, Black Diamond, the Official Committee of Unsecured Creditors ("Committee"), and A&M entered into a settlement agreement ("Settlement Agreement")

---

[2]The Debtors are: Black Diamond Mining Company, LLC, Black Diamond Land Company, LLC, FCDC Coal, Inc., Martin Coal Processing Corporation, Spurlock Energy Corporation, Turner Elkhorn Mining Company, and Wolverine Resources, Inc.

2

(Trustee Ex. 40) to resolve the Committee's Objection (Bk. Doc. 1511) to confirmation of the Debtors' third amended joint plan. The Committee's objection related substantially to the provisions of the plan that would release Debtor's claims against the A&M Parties ("A&M Claims") as described below.

7. Subsequent to the parties entering into the Settlement Agreement, the Third Amended Joint Plan of Reorganization, as modified ("Plan") (Bk. Doc. 1562, Ex. A), was confirmed by an order ("Confirmation Order") (Bk. Doc. 1562) entered on July 23, 2009.

8. The Trust was formed pursuant to the Plan for the purpose of liquidating assets contributed to it and disbursing those assets to unsecured creditors.   (Plan at 14, 20).

9. The assets contributed to the Trust include the A&M Claims.   (Plan at 5, 21).

10. In the Complaint, which is attached to the Memorandum Opinion and Order transferring U.S. District Court Civil Case No. 7:10-cv-00110 *McKinstry v. Sergent*, to this Court ("Complaint") (AP Doc. 1, Ex. A), the Trustee asserts claims against the A&M Parties pertaining to whether Genser and Tate properly carried out their duties under the CRO Order during the bankruptcy. The Trustee alleges that through the gross negligence and willful misconduct of the A&M Parties that Black Diamond was significantly damaged and prevented from completing a successful reorganization.

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Bankruptcy Procedure 7056, Federal Rule of Civil Procedure 56 applies in adversary proceedings.

> [O]n several occasions, the Court of Appeals for the Sixth Circuit has described the standard to grant a motion for summary judgment as follows:
>
>> A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under this test, the moving party may discharge its burden by "pointing out to the [bankruptcy] court . . . that there is an absence of evidence to support the nonmoving party's case."

3

*Buckeye Retirement Co., LLC, Ltd., v. Swegan (In re Swegan)*, 383 B.R. 646, 652-53 (B.A.P. 6th Cir. 2008) (quoting *Gibson v. Gibson (In re Gibson),* 219 B.R. 195, 198 (B.A.P. 6th Cir.1998)). The Supreme Court has instructed that a court must look beyond the pleadings and assess the proof needed to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 547, 587 (1986). After making an assessment of the proof, the determinative issue is "whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986). In this regard, the moving party carries the burden of showing there is an absence of evidence to support a claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). After the moving party meets this burden, the non-moving party must go beyond the pleadings to identify more than a mere scintilla of evidence showing that there is a genuine issue of material fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. P. 56(e). "The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street*, 886 F.2d at 1479 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

## ISSUES

Before this Court can apply the summary judgment standard to the facts of this case, we need to determine two preliminary issues:

    A.    Whether Genser is entitled to quasi-judicial immunity, and

    B.    Whether the substantive law of New York or Kentucky is to be applied to this case.

## DISCUSSION

    A.    *Genser is not entitled to quasi-judicial immunity.*  The A&M Parties argue that since Genser had all of the duties of a trustee, he is entitled to quasi-judicial immunity. The Court has already stated that: "Mr. Genser is a chief restructuring officer. He is not a Trustee under the law. There is no Trustee in this case." (Trustee Ex. 19 at 75).

The Court has found that: "Under the CRO Order, the A&M Parties are the functional equivalent of a trustee." (Memorandum Opinion at 9 (AP Doc. 26)). However, even though Genser was the functional equivalent of a trustee in that he had the duties of a trustee Genser did not have the important limitations of a trustee. For instance, (i) the terms of his employment were required to be acceptable to the Petitioning Creditors (CRO Order at 2); (ii) his employment required an engagement letter to be negotiated between Debtor and A&M (CRO Order at 4); and (iii) the retainer of $250,000 and fees of up to $750 per hour received by A&M far exceed the compensation of a trustee (CRO Order at 5).

In addition, the Court agrees with the Trustee that where the A&M Parties have previously asserted in pleadings before this Court that they are officers of the Debtor rather than professionals under the Bankruptcy Code, they cannot now change their position. In a response of Debtors to objections to the CRO Order, the Debtors, state:

> [T]here is no requirement of disinterestedness for the CRO or other A&M professionals working on this matter because they are serving as officers of the Debtors and *not* being retained as professionals under the Bankruptcy Code. This arrangement was considered and approved by the U.S. Trustee's Office and is expressly contemplated by the Engagement Letter. In other words, Mr. Genser is serving as an officer of the Debtors and such corporate governance arrangements do not implicate the principles of "disinterestedness."

(Trustee Ex. 43 at ¶ 22 (emphasis in original)). The Court agrees with the A&M Parties that their retention as officers of the Debtor did not implicate the principles of disinterestedness. Neither does it entitle them to quasi-judicial immunity.

Finally, the A&M Parties have already twice negotiated the terms of their limitations of liability and immunity. First in the Engagement Letter and second in the Settlement Agreement. They cannot now escape those negotiated terms.

The A&M Parties are *not* entitled to quasi-judicial immunity.

B.   *A genuine issue of material fact as to the parties' intent on the choice of law to be applied in this adversary proceeding precludes summary judgment.* The A&M Parties argue that New York law applies because of the choice of law provision in the Engagement Letter which provides: "This Agreement . . . shall be governed and construed in accordance with the laws of

5

the State of New York, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof." (Bk. Doc. 94 at 7).

The Trustee argues that because of the integration clause in the Settlement Agreement, the Settlement Agreement supersedes the Engagement Letter, except for specific provisions of the Engagement Letter that are referred to and preserved in the Settlement Agreement. Therefore, according to the Trustee, because the Settlement Agreement contains no choice of law provision, Kentucky law applies.

The Trustee further argues that even if New York law applies by virtue of the Engagement Letter, then review of New York's conflict of laws provisions would result in Kentucky law being applied to this adversary proceeding. However, the conflict of law provision specifically excludes consideration of New York's conflict of law provisions to determine applicable law. So if the Engagement Letter has not been superseded by the Settlement Agreement, New York substantive law will be applied.

The A&M Parties take the position that this Court has already determined that the Engagement Letter has not been superseded by the Settlement Agreement. The A&M Parties are referring to this Court's Memorandum Opinion (AP Doc. 26) regarding the Trustee's Motion to Remand and Motion for Abstention. In the Memorandum Opinion, the specific provisions of the Engagement Letter considered by the Court were those relating to this Court's retention of jurisdiction in relation to the Trustee's argument that the case should be remanded to the state court from which it was removed. The Court also considered whether the Plan in some manner restricted this Court's jurisdiction over the A&M Claims.[3] The Court did not, nor was it necessary,

---

[3] Specifically, the Findings of Fact made in the Memorandum Opinion related to the Engagement Letter state:

> U. The *Plan* did not abrogate or otherwise affect the terms of either the CRO Order or the *order* approving the terms of the Engagement Letter, instead preserving the maximum subject matter jurisdiction of this Court: "[T]he Bankruptcy Court will retain such jurisdiction over the Chapter 11 Cases after the Effective Date as is legally permissible. . . . (Plan at 39.)
> . . .
> AA. The claims against the A&M Parties arise from and are related to the implementation of the CRO Order.

6

for the Court to go so far in the Memorandum Opinion as to make the finding of whether the Engagement Letter had been superseded in its entirety other than where it was preserved by the Settlement Agreement. In fact, the Settlement Agreement is not mentioned in the Memorandum Opinion.

Now, it is necessary that such a determination be made in this proceeding. However, as highlighted below, the Settlement Agreement is far from clear and unambiguous.

The integration provision in the Settlement Agreement provides: "This Agreement constitutes the entire agreement between the parties *concerning the matters set forth herein,* supersedes any and all prior agreements between them *concerning the matters set forth herein*, and merges herein all prior statements and actions." (Trustee Ex. 40 at ¶ 17 (emphasis added)). The Trustee argues that the phrase "*concerning the matters set forth herein*" relates to all aspects of the A&M Claim. The A&M Parties argue that the phrase relates to only the very specific issues addressed in the Settlement Agreement such as the indemnification provisions. Either argument is possible. The Settlement Agreement also provides that "any uncertainty or ambiguity herein shall not be construed against any one party but shall be construed as if all parties to this Agreement jointly prepared all aspects of this Agreement." (Trustee Ex. 40 at ¶ 18).

Further, as previously argued by the Trustee in her attempts to have this Court remand this proceeding, "the Settlement Agreement and the Plan—were the product of hard-fought negotiations between the [Committee], which represents the beneficiaries of the Trust, and the A&M [Parties] over the terms on which Black Diamond's claims [the A&M Claims] would be assigned to the Trust." (Plaintiff's Reply in Support of Motion for Abstention ("Abstention Reply") at 11-12 (Doc. 21)).

To determine whether the Engagement Letter has been superseded in its entirety, except as preserved by the Settlement Agreement, the Court must delve into the intent of the parties at

---

BB. The claims against the A&M Parties also arise under and are in connection with the obligations under the Engagement Letter.

(Memorandum Opinion at 6-7 (emphasis added)).

the time they entered into the Settlement Agreement. Neither party provided evidence regarding this issue. A separate evidentiary hearing is necessary for its resolution.

### CONCLUSION

Accordingly, being otherwise sufficient advised, the Court concludes:

1. That there is a question of material fact in this adversary proceeding as to the intent of the parties at the time they entered into the Settlement Agreement. An evidentiary hearing shall be scheduled on this issue by separate order.

2. The Motion for Summary Judgment is hereby OVERRULED. A separate order in conformity herewith shall be entered.

Copies to:
Ellen Arvin Kennedy, Esq. (for service on all interested parties)
Taft A. McKinstry, Esq.
Geoffrey S. Goodman, Esq.
Mary Elisabeth Naumann, Esq.
John C. Goodchild, III, Esq.
Jay E. Ingle, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
*Joseph M. Scott, Jr.*
**Bankruptcy Judge
Dated: Tuesday, October 18, 2011
(jms)**